## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

TRACY BALLARD                                                    PLAINTIFF


V.                          NO. 1:10CV00023 JTR


MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                         DEFENDANT


## MEMORANDUM AND ORDER

### I.  Introduction

Plaintiff, Tracy Ballard, has appealed the final decision of the Commissioner of the Social Security Administration (the  "Commissioner") denying his claim for Supplemental Security Income ("SSI").  Both parties have filed Appeal Briefs (docket entries #13 and #14), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.  *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g).  While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

On January 20, 2009 (Tr. 112), Plaintiff filed an application for SSI, alleging disability since July 1, 2007. (Tr. 73-80). In his "Disability Report - Adult," he stated that "ruptured discs, hypertension, back/hip/shoulder pain" were his disabling conditions. (Tr. 105). After Plaintiff's claim was denied at the initial and reconsideration levels, he requested a hearing before an Administrative Law Judge ("ALJ").

On August 20, 2009, the ALJ conducted an administrative hearing. (Tr.20-38). Plaintiff was the only witness. At the time of the hearing, he was 38-years old, and received a GED while incarcerated in the Arkansas Department of Correction. (Tr. 23). During the last fifteen years, Plaintiff reported two jobs: a position as a "construction employee" from June of 1997 through January of 1998; and a position

as a "fabricator" from September of 2006 through November of 2006.[2] (Tr. 105-06).

During the administrative hearing, Plaintiff testified that his last job was "breaking

horses." According to Plaintiff, he was injured in two separate incidents: (1) a horse

"tore out both my shoulders;" and (2) another horse later rolled on him "and then got

up, stood up on me." (Tr. 26-27). The last incident occurred on July 7, 2007, which

is the alleged onset date of Plaintiff's disability.[2] *Id.*

The ALJ considered Plaintiff's impairments by way of the familiar five-step

sequential evaluation process. Step 1 involves a determination of whether the

claimant is involved in substantial gainful activity ("SGA"). 20 C.F.R. §

404.1520(a)(4)(I) (2005), §416.920. If the claimant is, benefits are denied, regardless

of medical condition, age, education, or work experience. *Id.*, § 404.1520(b), §

416.920.

Step 2 involves a determination, based solely on the medical evidence, of

whether the claimant has a "severe" impairment, *i.e.*, an impairment or combination

of impairments which significantly limits the claimant's ability to perform basic work

activities. *Id.*, § 404.1520(4)(ii), § 416.920. If not, benefits are denied. *Id.*

---

[2]In his decision, the ALJ found that, based on Plaintiff's earnings record, he "has never earned enough to constitute substantial gainful activity." (Tr. 11, 81).

[2]Plaintiff's medical records indicate this incident took place on July 17, 2007. (Tr. 157).

Step 3 involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(a)(iii), § 416.920. If so, and the duration requirement is met, benefits are awarded. *Id.*

Step 4 involves a determination of whether the claimant has sufficient RFC, despite the impairment(s), to perform the physical and mental demands of past relevant work. *Id.*, § 404.1520(4)(iv), § 416.920. If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 404.1520(4)(v), § 416.920. If so, benefits are denied; if not, benefits are awarded. *Id.*

In his December 19, 2009 decision (Tr. 9-16), the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since January 20, 2009, his application date; (2) had severe impairments consisting of "chronic lower back pain, bilateral shoulder pain, and hypertension;" (3) did not have an impairment or combination of impairments meeting a Listing; (4) had the RFC to perform the full range of light work; and (5) had no past relevant work because his previous employment did not rise to the level necessary to constitute substantial gainful activity. Considering Plaintiff's age, education, work experience and RFC, the ALJ used the Medical-Vocational

4

Guidelines to conclude that there are jobs available in the national economy that Plaintiff can perform. Accordingly, the ALJ concluded that Plaintiff was not disabled.

On April 14, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 1-3). Plaintiff then filed his Complaint appealing that decision to this Court. (Docket entry #2).

## II. Analysis

In Plaintiff's Appeal Brief (docket entry #12), he argues that the ALJ erred: (1) in rejecting the opinion of Dr. Oldenberg, Plaintiff's treating physician, that Plaintiff is "unable to work at any job [that would constitute gainful employment]" (2) in arriving at an RFC that is not supported by the medical evidence; and (3) in discounting Plaintiff's credibility.

For the reasons discussed below, the Court concludes that Plaintiff's second argument has merit. Accordingly, the Commissioner's decision must be reversed.

## A.   The ALJ Did Not Err In Considering But Rejecting The Opinion of Dr. Oldenberg

Plaintiff's medical records supporting his allegedly disabling impairments are sparse. On July 20, 2007, he was admitted to the emergency room of the White River Medical Center complaining of pain in his shoulders from riding a horse "last week,"

and pain in his upper chest and inner thigh from having been thrown from a horse and then "stepped on" "three days ago." (Tr. 157). X-rays of Plaintiff's left and right shoulders revealed no fractures or dislocations and a "normal" right and left shoulder. (Tr. 158, 161). An x-ray of Plaintiff's chest was negative (Tr. 158), with no evidence of any "acute trauma." (Tr. 162). The doctor's notes reflect a diagnosis of "contused chest" and "bilateral shoulder strain." (Tr. 159). After receiving a prescription for Naprosyn and Vicodin, Plaintiff was released to go home. (Tr. 164).

On July 30, 2008, he returned to the emergency room of the White River Medical Center and complained of "chronic back pain from injury one year ago." (Tr. 166). He described his pain as being in the middle of his back and indicated its intensity was 8 on a 10 scale for the last year. (Tr. 168). X-rays of Plaintiff's thoracic and cervical spine revealed only degenerative joint disease. A chest x-ray was negative. (Tr. 167). Plaintiff was given a prescription for Percocet and allowed to go home.

On December 4, 2008, Plaintiff was seen for the first time by Dr. Oldenberg, a general practitioner in Horseshoe Bend, Arkansas. His chief complaint was chronic shoulder and back pain from having "both shoulders pulled out of socket" and injuring his back while working with horses. (Tr. 176). He described his shoulder pain as being "sharp," "shooting," and "stabbing." His back pain was described as "burning,"

6

"stabbing," "sharp" and "shooting." (Tr. 177). Dr. Oldenberg prescribed Lorcet, Roxicodone and Valium.  (Tr. 178). She also ordered an MRI of Plaintiff's thoracic and lumbar spine and x-rays of his of his left and right shoulders. (Tr. 146).

The MRIs and x-rays were performed on December 5, 2008.  According to the radiologist notes, the MRI of Plaintiff's thoracic spine revealed: (1) degenerative disc space disease, mild wedging of T7, T8 and T9, with osteophyte spurring and mild cortical endplate irregularities at those three levels; (2) small disc protrusion at T4-T5 and T7-T8; and (3) slight disc bulge at the T8-T9 level. (Tr. 147). The MRI of Plaintiff's lumbar spine showed that discs L1 through L5 were "normal" but there was a "minimal disc bulge at L5-S1 producing no mass effect upon the thecal sac or nerve roots." (Tr. 148). According to the radiologist notes, the x-rays revealed "normal left shoulder" and "normal right shoulder." (Tr. 149-150).

On January 8, 2009, Dr. Oldenberg saw Plaintiff. He reported his pain, with medication, as 7 on a 10 scale and, without  medication, 10+.  (Tr. 199). Dr. Oldenberg diagnosed "chronic intractable pain syndrome; LBP intractable T and L spine; bilateral shoulder pain."

On January 9, 2009,[3] Dr. Oldenberg made the following handwritten notation on a

prescription pad:

> This note confirms Tracy Ballard is a patient of mine. He has several
> disabling conditions due to an accident causing a herniated disc at T4-T5
> and T7-T8 resulting in pinched nerves and chronic pain. It is my medical
> opinion he is a unable to work at any job that would give any gainful
> employ employment.

The purpose of Dr. Oldenberg's notation is unclear; however, ten days later Plaintiff

notified the Social Security Administration of his intention to file an application for

an SSI benefits.[4]

On February 16, 2009, Dr. Oldenberg saw Plaintiff. He complained of "chronic

shoulder and back pain" and "new pain in back area from fall." (Tr. 170). He rated his

pain level, with medications, as 7 on a 10 scale and stated he needed "more pain

control to be able to try to work part time." (Tr. 171). Dr. Oldenberg advised Plaintiff

to continue taking his Lorcet, Roxicodone, and Valium. Between March and August

of 2009, Dr. Oldenberg saw Plaintiff once a month for his complaints of back and

---

[3]The notation is erroneously dated January 9, 2008. (Tr. 136). As indicated
previously, Dr. Oldenberg saw Plaintiff, as a "new patient," on December 4, 2008.
(Tr. 176). Thus, it is obvious that, when the new year began, she forgot and dated her
note January 9, 2008, rather than the correct date of January 9, 2009.

[4]Dr. Oldenberg's notation appears to be at odds with the radiologist's findings
which revealed only "small central disc protrusion at T4-T5 and T7-T8." The
radiologist does not mention anything about a "herniated disc" at those levels or any
"pinched nerves."

shoulder pain. At the conclusion of each examination, she directed Plaintiff to continue taking his pain medications, which consisted of Lorcet, Roxicodone, and Valium. (Tr. 205-21).

On March 9, 2009, a reviewing physician, Dr. Robert Redd, completed a "Physical RFC Assessment." (Tr. 183-90). Dr. Redd concluded that Plaintiff was capable of performing light work. (Tr. 190).

During the August 20, 2009 administrative hearing, the ALJ stated that he was going to "send [Plaintiff], at the government's expense, to an orthopedic surgeon to take a look at these various areas where you've got problems." (Tr. 36). On November 16, 2009, Plaintiff was examined by Dr. Ted Honghiram, a consulting orthopedic surgeon. Plaintiff told Dr. Honghiram that his back and shoulder pain only allowed him to work "for a couple of hours... and he has to stop, so he has not been able to do anything much to make a living." (Tr. 225). He told Dr. Honghiram the only medication he was taking for his pain was "ibuprofen." He also told Dr. Honghiram that an earlier MRI of his back had revealed "a small bulging disc." *Id.*

Based on his physical examination of Plaintiff and his review of Plaintiff December 2008 MRIs, Dr. Honghiram made the following findings:

> The examination of this gentleman demonstrates he is able to walk normally. He came in by himself. He is able to get dressed and undressed with no difficulty.

The examination of his thoracolumbar spine and lumbar spine shows evidence of full range of motion with no acute muscle spasms. He has some tenderness along the upper thoracic area. Straight leg raises cause no sciatic pain in both legs. He has normal reflex and sensation.

Interviewing his records he had an MRI scan done on the lumbar spine in December of 2008, which showed minimal bulging discs at the L5-S1 level and also at the same time he had [sic] thoracolumbar spine MRI scan [sic] showed evidence of minimal bulging at different levels with degenerative disc spaces at the mid thoracic area. He hopes that he can get this fixed, but I do not think that he could ever have surgery for this.

The examination of his shoulder on both sides show complete range of motion of the shoulder joint with good abduction strength. He has no witness and no muscle atrophy.

(Tr. 226). Dr. Honghiram's "impression" was that "this gentleman has a history of having chronic pain in his shoulder and back, most likely from tendinitis of his shoulder and also from lumbosacral strain in his lumbar spine, with bulging discs. His pain will be a chronic one, but I do not think that it can be fixed by surgery." *Id.*

Dr. Honghiram's "recommendation" was that, after Plaintiff's wife obtains insurance, he should be "evaluated by a spinal surgeon or orthopedic specialist." Finally, Dr. Honghiram expressed the opinion that Plaintiff "is able to work, but he has to stop [sic] time to time when the pain gets so severe." *Id.*

Dr. Honghiram completed a "Medical Assessment of Ability to Perform Work-Related Activities (Physical)" which reflected Plaintiff's limitations. (Tr. 227-28).

10

In his decision, the ALJ made it clear that, in determining Plaintiff's RFC, he considered Dr. Oldenberg's medical records and notes and her opinion that Plaintiff "cannot do any gainful employment." (Tr. 14). However, he discounted her opinion that Plaintiff was unable to work because it was not supported by the x-rays and MRIs, which revealed "either mild abnormalities [with Plaintiff's back] or no abnormalities [with Plaintiff shoulders]." *Id.*

Plaintiff argues that two herniated discs and two bulging discs cannot be called "mild" abnormalities." (Plaintiffs App. Brf. at 12). While Dr. Oldenberg, a general practitioner, states in the handwritten note that Plaintiff has "a herniated disc at T4-T5 and T7-T8, that is *not* how the radiologist described the results of the MRIs of Plaintiff's thoracic spine. They note "mild anterior wedging of the T7 and T8 vertebral bodies," and at the T4-T5 disc level, a "small disc protrusion which effaces the subarachnoid space . . . but does not produce any definite mass effect upon the spinal cord. At the T7-T8 level, the radiologist notes reflect "a small central disc protrusion which also effaces the subarachnoid space." (Tr. 147).

Dr. Honghiram, an orthopedic specialist, reviewed these same MRIs and concluded that they show "minimal bulging discs at the L5-S1 level and the "thoracolumbar spine MRI scan showed evidence of minimal bulging at different levels with degenerative disc spaces at the mid-thoracic area." (Tr. 226). Furthermore,

11

Dr. Honghiram's examination of Plaintiff's thoracolumbar spine and lumbar spine "shows evidence of full range of motion with no acute muscle spasms." While Dr. Honghiram noted that Plaintiff had "some tenderness along the upper thoracic area," straight leg raises "caused no sciatic pain in both legs" and Plaintiff had "normal reflex and sensation." *Id.*

Based on his review of the MRIs and his examination of Plaintiff, Dr. Honghiram completed a Medical Assessment of Plaintiff's Ability to Perform Work-Related Activities indicating his opinion of Plaintiff's limitations. The ALJ gave Dr. Honghiram's opinion considerable weight and noted that the opinions he expressed about Plaintiff's back problems and his ability to perform work-related activities were "within his area of [medical expertise]." (Tr. 14).

On December 23, 2009, approximately six weeks after Dr. Honghiram completed his Medical Assessment of Plaintiff's Ability to Perform Work-Related Activities and four days *after* the ALJ issued his decision, Dr. Oldenberg completed a "Medical Source Statement Physical". It appears this document was received and considered by the Appeals Council before it affirmed the ALJ's decision. Even if this document have been available to the ALJ before he made his decision, he undoubtedly would have discounted it, for the same reasons that led him to reject Dr. Oldenberg's opinion that Plaintiff was unable to work, and to accept the physical limitations

imposed by Dr. Honghiram in his November 16, 2000 medical assessment. (Tr. 227-29).

Thus, the Court concludes that the ALJ properly discounted the opinion of Dr. Oldenberg, a general practitioner, and chose to rely on the opinion of Dr. Honghiram, an orthopedic specialist, in determining Plaintiff's RFC. Accordingly, Plaintiff's argument is without merit.

**B.      The ALJ Erred In Determining Plaintiff's RFC**

According to the ALJ, Plaintiff has the RFC "to perform the full range of light work." In reaching that conclusion, the ALJ explicitly found that Plaintiff can "stand/walk six hours and an eight hour workday with normal breaks . . . . " (Tr. 11). There simply is no medical evidence to support that finding, which is crucial to the ALJ's determination that Plaintiff can perform a full range of light work. Dr. Honghiram found that Plaintiff could only stand/walk for two hours in an eight hour day. (Tr. 228). Dr. Oldenberg found that Plaintiff could stand/walk for three to four hours in an eight-hour day. (Attachment to Plaintiff's App. Brf. at 2). Thus, *no medical evidence* supports the ALJ's finding find that Plaintiff can stand/walk six hours in an eight-hour workday.

In a footnote, the Commissioner suggests that the Court should substitute speculation for medical evidence and attempt to use the Grids to triangulate a holding

13

that Plaintiff is still capable of performing sedentary work, something that "would not have been a significant modification of the ALJ's RFC determination..." The Court declines the invitation to rehabilitate the ALJ's flawed RFC determination by speculating on whether Plaintiff is truly capable of performing a full-time sedentary job, something that wold require the Court to make a host of medical and vocational findings that are in no way developed or supported by the record.

Accordingly, the Court concludes that the ALJ committed reversible error in finding that Plaintiff had the RFC to perform a full range of light work.

## C.    The ALJ's Credibility Analysis Is Not Supported By The Record

Because Plaintiff second ground for reversal has merit, the Court need not address Plaintiff's final argument.

## III.  Conclusion

Because substantial evidence does not support the ALJ's RFC determination, the Commissioner decision must be reversed. On remand, the ALJ should ensure that he addresses whether Plaintiff's RFC allows him to perform sedentary work, or some limited range of light work. If necessary, the ALJ should also obtain vocational expert testimony.  Finally, the ALJ should also carefully update the medical record and obtain and consider all the relevant medical evidence and determining Plaintiff's RFC.

IT IS THEREFORE ORDERED THAT the Commissioner's decision is

reversed and this matter is remanded to the Commissioner for further proceedings pursuant to "sentence four" of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

     DATED this 13th day of April, 2011.

_____
UNITED STATES MAGISTRATE JUDGE